1   **WO**

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                        FOR THE DISTRICT OF ARIZONA

9

10  The Householder Group, LLLP,              )   No. CV 09-2370-PHX-SMM
                                              )   No. CV 10-0918-PHX-SMM
11          Plaintiff and                     )   (Consolidated)
            Counterdefendant,                 )
12                                            )   **MEMORANDUM OF DECISION AND**
    v.                                        )   **ORDER**
13                                            )
    Charles Van Mason and Jeff DeBoer,        )
14                                            )
            Defendants and                    )
15          Counterclaimants.                 )
                                              )
16  _____)
    Robert Burkarth,                          )
17                                            )
            Consolidated Plaintiff and        )
18          Counterdefendant,                 )
                                              )
19  vs.                                       )
                                              )
20  The Householder Group, LLLP,              )
                                              )
21          Consolidated Defendant and        )
            Counterclaimant.                   )
22  _____)

23

24          Before the Court are (1) the Motion for Partial Summary Judgment by Plaintiff

25  Householder Group, LLLP ("THG") on the issue of breach of contract (Doc. 78); and (2) the

26  Motion for Partial Summary Judgment by Defendants Charles Van Mason, Jeff DeBoer, and

27  Robert Burkarth (collectively the "Former Managers") on the issue of THG's Uniform Trade

28  Secrets Act (UTSA) claims. (Doc. 73). The matters are fully briefed by both sides. (Docs.

    73-77; Docs. 79-80; Docs. 83-91; Docs. 95-96.) After reviewing the briefs, and having

determined that oral argument is unnecessary,[1] the Court denies THG's Motion for Partial Summary Judgment, and grants the Former Managers' Motion for Partial Summary Judgment.

**BACKGROUND**

**I.     Factual Background[2]**

THG is a financial advisory firm headquartered in Arizona that conducts business nationwide through branch offices managed by branch office managers ("managers"). (Doc. 62 at 9; Doc. 66 at 2.) The managers are investment advisors ("brokers") who act as representatives of THG, and are simultaneously registered representatives of the registered broker-dealer. (Doc. 18 ¶ 7.) At all times relevant to this action, THG's registered broker-dealer was SunAmerica Securities, which subsequently changed its name to AIG Financial Advisors. (Doc. 18 ¶ 7.)

THG provides training to the branch managers in marketing techniques, teaching strategies the managers can use to "acquire a high net worth client base." (Doc. 18 ¶ 9.) A central element of THG's training consists of teaching the managers to host dinner seminars, in which the managers utilize slides and solicitation techniques provided by THG in efforts to attract investment clients. (Doc. 18 ¶ 8.) As independent contractors of THG, managers are solely responsible for paying the costs of the training and consulting system, as well as for the costs of opening and operating their independent branch offices. (Doc. 18 ¶ 9.)

THG typically requires managers, including the Former Managers in this case, to sign a Branch Office Agreement ("BOA"). (Doc. 62 at 9; Doc. 66 at 2; Doc. 63 ¶¶ 2-4; Doc. 67 ¶¶ 2-4.) The Former Managers each signed BOAs. (Doc. 83-1 ¶¶ 7, 28, 56.)  Each BOA

---

[1] Defendant's request for oral argument is denied because the parties have had an adequate opportunity to present their written arguments, and oral argument will not aid the Court's decision. See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev., 933 F.2d 724, 729 (9th Cir. 1991).

[2] The facts as set forth in this section are those which are undisputed by the parties, except where otherwise noted.

contained a provision requiring a $150,000 integration fee for "the services and intellectual property" provided by THG, a notice of termination provision, and a provision prohibiting the Former Managers from impermissibly using THG trade secrets. (Doc. 80-3; Doc. 80-8; Doc. 80-13.)

The terms of the BOAs stated in pertinent part:

## III. CONSULTING SERVICES AND MARKETING SYSTEMS

During the term of this AGREEMENT, THG shall provide and furnish consulting services and training to Manager in the effective use of marketing systems and strategies which it has developed and perfected. Such consulting services or training shall be made available to Manager by such person or persons as THG shall designate and shall be furnished or conducted not more than once per month and at such other times as THG in its total discretion shall determine. The consulting and training services may be delivered by Ti-IG at such locations and by such means as THG shall determine.

The parties hereto agree that the services and intellectual property to be provided by THG, pursuant to this AGREEMENT, are of very significant value. The services and intellectual property were acquired, developed and perfected by THG, and are now provided to Manager, at a substantial cost to THG. The cost of the investment made by THG in its performance of this AGREEMENT can only be recouped by THG over an extended contractual relationship with Manager. The normal time period required for recoupment of the investment made by THG is thirty-six months during which time THG will suffer losses occasioned by its forbearance in associating with other revenue producing investment advisors in the Branch Office area.

As payment for the services provided to Manager by THG, Manager agrees to pay THG a one time fee of One Hundred Fifty Thousand Dollars ($150,000.00) and agrees to transact all Branch Office business through THG and receive the agreed upon payouts as hereinafter provided in Articles VII and VIII. At the election of Manager, Manager may sign a promissory note for all, or a part, of the one time fee. The promissory note shall bear interest at the rate of two hundred (200) basis points above *Wall Street Journal* prime which interest rate shall be adjusted semiannually. The promissory note shall be serviced by the payment of ten percent (10%) of Manager's Gross Revenue to THG.

## IV. PROPRIETARY AND CONFIDENTIAL INFORMATION AN[D] USE OF NAME.

During the term of this AGREEMENT, THG hereby grants to the Manager a non-exclusive license to use and have access to various forms of proprietary and confidential information and to the use of the name "THE HOUSEHOLDER GROUP" within the territory of the Branch Office which is described and set forth on Exhibit A attached hereto. The Manager shall have the exclusive right to conduct investment advisor business under the name of THE HOUSEHOLDER GROUP in the Branch Office territory during such time as the Manager is Actively Marketing such territory. The Manager agrees to keep confidential and not to use or to disclose to others, except his

or her employees and Registered Representative assistants, either during or after the term of this AGREEMENT, the proprietary information, customer or prospect lists, computer database, marketing and/or seminar materials or other trade secrets which he/she gains knowledge of through the Manager's association with THG, or the Related Entities, except for any use or disclosure in the ordinary course of business during the term of this AGREEMENT. The Manager further agrees that at the termination of this AGREEMENT, he/she will neither take nor retain, without prior written authorization from THG or the Related Entities, any papers, computer database, files or other documents or copies thereof or other confidential information of any kind belonging to THG or Related Entities and/or pertaining to their business, sales, products, financial condition or other proprietary information; and THG or the Related Entities may, at any time during the term of this AGREEMENT and upon its termination, demand the return of any such papers, computer database, files, other documents, confidential information, or other trade secrets and the Manager shall promptly comply.

. . . .

**Term.** The term of this AGREEMENT shall be for a period of 3 years but it shall automatically be renew[ed] for succeeding periods of one year unless written notification is given by one of the parties to the other party not more than 60 days and not less than 30 days prior to its expiration. This AGREEMENT shall not become a binding contract until it is executed by all parties appearing on the signature page and will be deemed effective as of the date on the signature page, unless and to the extent a specific provision of this AGREEMENT refers to a different effective date. This AGREEMENT shall supersede any and all previous agreements between THG and Manager.

(Doc. 80-3 at 2-4, 6.)

Defendant Charles Van Mason ("Mason") first met with THG representatives in 2002 (Doc. 83-1 ¶ 3). Mason signed the BOA on October 6, 2004. (Doc. 83-1 ¶ 7.) The parties disagree as to the date the BOA became effective as to Mason, however; THG asserts that the agreement became effective on October 19, 2004 (Doc. 79 ¶¶ 6, 9), while Mason contends that THG backdated the BOA to March, 2003 (Doc. 83-1 ¶ 5). The parties agree that Mason began his affiliation with THG in October of 2002, and that he completed multiple tasks relating to his affiliation before he was presented with the BOA. (Doc. 83-1 ¶ 3; Doc. 18 ¶ 21.) Indeed, the parties agree that THG earned in excess of $150,000 in commissions and fees generated by Mason during this period. (Doc. 91 ¶ 45). Mason also claims that he was told that if he did not sign the BOA, he would be forced to cease his affiliation with THG. (Doc. 87 ¶¶ 15-16; Doc. 86-1 at 6.)

Defendant Jeff DeBoer ("DeBoer") underwent three months of initial training by THG before entering into the BOA. (Doc. 83-1 ¶¶ 26, 28.) DeBoer signed a promissory note with

- 4 -

SunAmerica Securities, Inc., for the purpose of offsetting expenses involved in setting up his own branch office. (Doc. 80-11; Doc. 83-1 ¶¶ 47-48.) Defendant Robert Burkarth ("Burkarth") also signed a promissory note with SunAmerica Securities, Inc. (Doc. 80-16; Doc. 83-1 ¶ 64.)

THG did not provide any of the Former Managers with a list of clients upon their affiliation with THG. (Doc. 91 ¶ 3.) During their affiliation with THG, the Former Managers purchased lists of prospective clients from third party dealers. (Doc. 91 ¶ 38.) The Former Managers used the lists they purchased from the third party dealers to invite potential clients to dinner seminars at which they made presentations. (Doc. 91 ¶ 39.)

Mason and DeBoer both left THG without providing the thirty days notice purportedly required under the terms of their BOAs. (Doc. 83-1 ¶¶ 14, 37.) THG contends that Burkarth also failed to give timely notice, but Burkarth disagrees, asserting that he gave advance notice of his intent to leave THG. (Doc. 83-1 ¶ 61.) Mason terminated his affiliation with THG on November 17, 2006, and began contacting his clients the following Monday to begin the process of moving the clients to his new dealer-broker, LPL Financial. (Doc. 83-1 ¶¶ 21-22.) Nearly all of Mason's clients were subsequently transferred to LPL Financial. (Doc. 83-1 ¶ 24.)

DeBoer terminated his affiliation with THG on December 5, 2006, and on that date hosted a "client appreciation event" where he announced his resignation from THG and his change to a new broker-dealer, Commonwealth. (Doc. 83-1 ¶ 45.) A number of DeBoer's clients signed forms authorizing him to transfer their accounts to his new broker-dealer. (Doc. 86-2 at 20.)

## II.   Procedural Background

On November 12, 2009, THG brought suit against Van Mason and DeBoer, alleging seven causes of action including breach of contract pertaining to the BOA and violation of the Arizona Uniform Trade Secret Act for alleged misappropriation of THG's client information. (Doc. 1.) Van Mason and DeBoer brought four counterclaims, including breach of contract and bad faith arising from the BOA. (Doc. 14.) On April 27, 2010, Burkarth

1   brought suit alleging five causes of action against THG, including claims for breach of

2   contract, bad faith, fraud, and negligent misrepresentation stemming from the BOA. (CV 10-

3   918-PHX-MHM, Doc. 1.) On May 21, 2010, the Court, to promote consistency and judicial

4   economy, consolidated Van Mason and DeBoer's case with Burkarth's similar case. (Doc.

5   36.) On May 27, 2010, THG brought five counterclaims against Burkarth, including breach

6   of contract related to the BOA and misappropriation of trade secrets. (Doc. 37.)

7         THG now brings its Partial Motion for Summary Judgment on the issue of Breach of

8   Contract against the Former Managers, arguing that no genuine issue of material fact exists

9   as to the Former Managers' breach of their BOAs, and Defendants DeBoer and Burkarth's

10  breach of their promissory notes. (Doc. 78.) The Former Managers also bring a Partial

11  Motion for Summary Judgment, arguing that there is no genuine issue of material fact as to

12  THG's Trade Secrets claims. (Doc. 73.)

13                            **LEGAL STANDARDS**

14  **I.    Motions for Summary Judgment**

15        A court must grant summary judgment if the pleadings and supporting documents,

16  viewed in the light most favorable to the nonmoving party, "show[] that there is no genuine

17  dispute as to any material fact and the movant is entitled to judgment as a matter of law."

18  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v.

19  Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines

20  which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also

21  Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit

22  under the governing law will properly preclude the entry of summary judgment." Anderson,

23  477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that

24  a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d

25  at 1130.

26        A principal purpose of summary judgment is "to isolate and dispose of factually

27  unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against

28  a party who "fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." Id. at 324. However, the nonmovant must set out specific facts showing a genuine dispute for trial. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

## II. Breach of Contract

In an action for breach of contract, the plaintiff has the burden of proving "the existence of a contract, breach of the contract, and resulting damages." Chartone, Inc. v. Bernini, 207 Ariz. 162, 170, 83 P.3d 1103, 1112 (App. 2004) (citing Thunderbird Metallurgical, Inc. v. Ariz. Testing Lab., 5 Ariz.App. 48, 423 P.2d 124 (1976)).

Arizona law follows the Restatement's view of duress, which defines it as:

> a) any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition, or b) any wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising his free will and judgment, if the threat was intended or should reasonably have been expected to operate as an inducement.

Inter-Tel, Inc. v. Bank of America, 195 Ariz. 111, 117, 985 P.2d 596, 602 (App. 1999). "Duress exists if one party is induced to assent to a contract by a wrongful threat or act of the other party." Id. (citing Frank Culver Elec., Inc. v. Jorgenson, 136 Ariz. 76, 77-78, 664 P.2d 226, 227-28 (App. 1983)). Normally a contract is not a product of duress "merely because one party takes advantage of the financial difficulty of the other." Inter-Tel, 195 Ariz. At 117, 985 P.2d at 602. "It is a different matter, however, when the wrongful act of one party is the very thing that created the other party's financial difficulty." Id. (citing USLife Title Co. v. Gutkin, 152 Ariz. 349, 356-57, 732 P.2d 579, 586-87 (App. 1986); Frank Culver Elec., Inc., 136 Ariz. at 78, 664 P.2d at 228).

## III.    Arizona Uniform Trade Secrets Act

Arizona has adopted the Uniform Trade Secrets Act ("UTSA"), which provides a cause of action for damages against a party for misappropriation of trade secrets. A.R.S. § 44-403(A) (2012). Arizona recognizes the Restatement of Torts in the absence of controlling authority. Enterprise Leasing Co. v. Ehmke, 197 Ariz. 144, 149, 3 P.3d 1064, 1069 (App. 1999). "Trade secret" is defined as:

> information, including a formula, pattern, compilation, program, device, method, technique or process, that both:
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

A.R.S. § 44-401.4.

The "hallmark" of trade secrets are their secrecy, and thus "not only must the subject-matter of the trade secret be secret, it must be of such a nature that it would not occur to persons in the trade or business." Enterprise Leasing, 197 Ariz. at 149, 3 P.3d at 1069 (citing Wright v. Palmer, 11 Ariz. App. 292, 294, 464 P.2d 363, 365 (1970)). Therefore, matters of public knowledge are not protected as trade secrets. Enterprise Leasing, 197 Ariz. at 149, 3 P.3d at 1069.

The Restatement of Torts uses a six-factor test to determine if a trade secret exists:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in its business; (3) the extent of measures taken by the business to guard the secrecy of its information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Id. at 149 n.6, 464 P.3d at 1069 n.6.

"A list of customers, if their trade and patronage have been secured by years of business effort and advertising and the expenditure of time and money, constitutes an important part of a business and is in the nature of a trade secret." Prudential Insurance Co. v. Pochiro, 153 Ariz. 368, 371, 736 P.2d 1180, 1183 (App. 1987) (quoting Town & Country House & Home Service, Inc. v. Evans, 150 Conn. 314, 319, 189 A.2d 390, 393-94 (1963)

1    (citing the Restatement of Torts)).

2                                        **DISCUSSION**

3    **I.    Plaintiff's Partial Motion for Summary Judgment**

4           **A. Breach of the BOAs by the Former Managers**

5           THG argues that it is entitled to summary judgment on the issue of the Former

6    Managers' breach of the BOA. (Doc. 78.) THG takes the position that there is no genuine

7    issue of material fact as to whether the Former Managers committed breach of contract by

8    failing to provide THG with the requisite thirty days notice before terminating their

9    affiliation with THG. (Doc. 78.) The Former Managers defend by asserting that the BOAs

10   are unenforceable as the product of both duress and fraud in the inducement, and that the

11   term requiring thirty days notice is an unlawful restrictive covenant. (Doc. 83.)

12          After consideration of the parties positions, this Court finds that there exist material

13   issues of fact suitable for trial on the matter of the enforceability of the contracts. Mason,

14   through deposition testimony,[3] claims that when THG presented the BOA to him after he had

15   been affiliated with THG for over a year, he was told that he must sign it without

16   modification or cease his affiliation with THG. (Doc. 86-1 at 6-8; Doc. 87.) Mason states

17   further that by the time he was told to sign the BOA, he had opened three offices under THG,

18   was presenting THG's dinner seminars on a monthly basis, and had invested considerable

19   capital affiliating with THG. (Doc. 86-1 at 6-8; Doc. 87.)

20          DeBoer testified at deposition that he too had been affiliated in practice, if not

21   officially, with THG for several months prior to being presented with the BOA (Doc. 86-2

22   at 23-24; Doc. 88); and testified that he was told to sign the BOA without modification, or

23   cease his affiliation with THG (Doc. 86-2 at 26; Doc. 88). Moreover, DeBoer offers evidence

24   suggesting that he asked THG early on, before being presented with the BOA, whether he

25

26   ——————————————

27          [3] The Court notes that Defendants' also submitted supplementary affidavits in support
     of their claims; however, because the affidavits merely restated points from Defendants'
28   deposition testimony, they were not considered as adding additional weight to Defendants'
     arguments.

1    would have to sign any other documents, and was told that he would not. (Doc. 86-2 at 24-
2    25.)

3          Burkarth offers evidence that he too had affiliated in practice with THG for several
4    months before ever being made aware of the BOA. (Doc. 89; Doc. 86-5 at 12-15.) Further,
5    Burkarth testified that THG gave him one hour to read and sign the BOA as-is or cease his
6    affiliation with THG. (Doc. 89; Doc. 86-5 at 12-14, 19-20.)

7          Taking into account all disputed facts and making reasonable inferences in favor of
8    the non-moving party, this Court finds that the Former Managers raise triable issues of fact
9    as to whether the circumstances surrounding their execution of the BOAs constituted duress
10   under Arizona law. Although normally duress will not be found where one party merely takes
11   advantage of the financial difficulties of the other, it may be found "when the wrongful act
12   of one party is the very thing that created the other party's financial difficulty." Inter-Tel, 195
13   Ariz. at 117, 985 P.2d at 602.

14         Here, the Former Managers all raise genuine issues of fact regarding whether THG's
15   presentation of the BOA subsequent to *de facto* affiliation by the managers (months or, in the
16   case of Mason, over a year after affiliation began), and the manner in which the managers
17   were induced to sign the BOAs (being told to sign "as-is" on short or no notice, or cease their
18   affiliation) were wrongful acts by THG in which THG took advantage of financial
19   difficulties it caused the Former Managers.

20          Thus, considering both the disputed and undisputed facts, as well as making all
21   reasonable inferences in favor of the non-moving parties, this Court finds that the Former
22   Managers all raise issues of material fact as to the enforceability of the BOAs due to potential
23   duress. Finding against summary judgment on these grounds, the Court need not address the
24   Former Managers' additional arguments concerning fraudulent inducement or unlawful
25   restrictive covenants.

26         **C. Breach of the promissory notes by Defendants DeBoer and Burkarth**

27         THG makes additional claims for breach of contract by DeBoer and Burkarth, arguing
28   that they both breached the terms of promissory notes they signed. (Doc. 78.) DeBoer and

1  Burkarth respond that the promissory notes were not properly executed (Doc. 88; Doc. 89),

2  that THG has no standing to enforce the notes because THG was not a party (Doc. 88; Doc.

3  89), and that their obligations under the notes have been satisfied (Doc. 88; Doc.86-5 at 25-

4  26).

5      Taking into account all disputed and undisputed facts, and making all reasonable

6  inferences in favor of the non-moving parties, the Court finds that DeBoer and Burkarth raise

7  genuine issues of material fact as to THG's standing to sue on the promissory notes and as

8  to whether their obligations under the notes were satisfied. DeBoer cites his declaration in

9  which he avows that the loan made to him under the note was by AIG, and that AIG forgave

10 the debt. (Doc. 88.) Burkarth similarly raises issues of fact regarding THG's privity on the

11 note, and whether the debt was satisfied. (Doc. 89; Doc. 86-5 at 25-26.)

12     As a result, the Court finds that DeBoer and Burkarth raise triable issues of material

13 fact, and thus that THG fails to show that its claims for breach of the promissory notes are

14 suitable for summary judgment.

15     **II.      Defendants' Partial Motion for Summary Judgment**

16     The Former Managers have simultaneously filed a Motion for Partial Summary

17 Judgment, asserting that there is no genuine issue of material fact as to THG's Trade Secrets

18 claim. (Doc. 73.)

19     The Former Managers contend that no genuine issue of material fact exists as to

20 THG's claims that the Former Managers misappropriated THG's trade secrets. (Doc. 73.)

21 The Former Managers urge that because THG did not provide them with the client lists, and

22 because they themselves developed the client lists through their own efforts, the lists were

23 not trade secrets, and thus that THG's claims are deficient as a matter of law. (Doc. 73.)

24     THG argues in response that although the Former Managers purchased lists of

25 prospective clients from third party vendors, those lists were requested "utilizing

26 demographics provided by THG." (Doc. 91 ¶¶ 39-40.) Thus, THG asserts that the clients

27 which the Former Managers ultimately obtained were clients of THG, and therefore

28 protectable under the UTSA.

1    After consideration of the parties' positions, the Court finds that THG's claims for

2    misappropriation of trade secrets are suitable for summary judgment. THG admits that it

3    provided no list of clients to the Former Managers, and that the managers instead purchased

4    their lists of prospective clients from a third party vendor. THG also admits that it was

5    through the Former Managers' solicitation at dinner seminars that the managers formed their

6    relationships with their clients. Nevertheless, THG attempts to assert a proprietary interest

7    in the relationship between the Former Managers and the clients merely because THG gave

8    the managers the "know-how" to obtain the clients in the first place through use of THG's

9    dinner seminars. The Court finds this argument unpersuasive.

10    Although customer or client lists may at times be subject to trade secret protection,

11    case law does not support THG's attempt to stake such a wide-reaching claim of ownership

12    over the clients of its independent contractors. Trade secret protection is appropriate for lists

13    of clients only where "their trade and patronage have been secured by years of business effort

14    and advertising and the expenditure of time and money." See Prudential Ins., 153 Ariz. at

15    371, 736 P.2d at 1180. Here, there is no dispute that it was the Former Managers who secured

16    the trade and patronage of their clients, not THG. While THG may indeed have expended

17    time, effort, and money in the development of its marketing strategies and dinner

18    presentation methods, THG does not contend that the Former Managers misappropriated

19    THG's methods or strategies. THG does not therefore have a protectable trade secret interest

20    in the lists of clients who were procured through the Former Managers' authorized use of

21    those methods.

22    Thus, taking into account all undisputed facts, and making reasonable inferences from

23    the facts in light of the nonmoving party, the Court finds that THG has failed to assert a

24    genuine issue of material fact as to its claims against the Former Managers for

25    misappropriation of trade secrets. Therefore, the Court finds that those claims are deficient

26    as a matter of law, and are subject to summary judgment against THG.

## CONCLUSION

27    **IT IS HEREBY ORDERED DENYING** THG's Motion for Partial Summary

- 12 -

1   Judgment on the issue of breach of contract (Doc. 78).

2       **IT IS FURTHER ORDERED GRANTING** the Former Managers' Motion for

3   Partial Summary Judgment (Doc. 73) on the issue of THG's trade secrets claims (Doc. 1 at

4   9).

5       **IT IS FURTHER ORDERED** setting the Final Pretrial Conference for **November**

6   **14, 2012 at 2:00 p.m.** The deadline for the parties to file dispositive motions has passed.

7   This matter appearing ready for trial, a Final Pretrial Conference shall be held in Courtroom

8   605, Sandra Day O'Connor U.S. Federal Courthouse, 401 W. Washington St., Phoenix,

9   Arizona 85003. The attorneys who will be responsible for the trial of the case shall attend

10   the Final Pretrial Conference. Counsel shall bring their calendars so that trial scheduling can

11   be discussed.

12       **IT IS FURTHER ORDERED** that, if this case shall be tried to a jury, the attorneys

13   who will be responsible for the trial of the lawsuit shall prepare and sign a <u>Proposed Pretrial</u>

14   <u>Order</u> and submit it to the Court on **Friday, October 19, 2012.**

15       **IT IS FURTHER ORDERED** that the content of the Proposed Pretrial Order shall

16   include, but not be limited to, that prescribed in the <u>Form of Pretrial Order</u> attached hereto.

17   Statements made shall not be in the form of a question, but should be a concise narrative

18   statement of each party's contention as to each uncontested and contested issue.

19       **IT IS FURTHER ORDERED** pursuant to Federal Rule of Civil Procedure 37(c) that

20   the Court will not allow the parties to offer any exhibits, witnesses, or other information that

21   were not previously disclosed in accordance with the provisions of this Order and/or the

22   Federal Rules of Civil Procedure and/or not listed in the Proposed Pretrial Order, except for

23   good cause.

24       **IT IS FURTHER ORDERED** directing the parties to exchange drafts of the

25   Proposed Pretrial Order **no later than seven (7) days before the submission deadline**.

26       **IT IS FURTHER ORDERED** that the parties shall file and serve all motions in

27   limine no later than **Friday, October 19, 2012**. Each motion in limine shall include the legal

28   basis supporting it.  Responses to motions in limine are due **Friday, October 26, 2012**.  No

replies will be permitted.  The attorneys for all parties shall come to the Final Pretrial Conference prepared to address the merits of all such motions.

**IT IS FURTHER ORDERED** directing the parties to complete the following tasks by the time of the filing of the Proposed Pretrial Order if they intend to try the case before a jury:

(1)     The parties shall <u>jointly</u> file a description of the case to be read to the jury.

(2)     The parties shall <u>jointly</u> file a proposed set of voir dire questions.  The voir dire questions shall be drafted in a neutral manner.  To the extent possible, the parties shall stipulate to the proposed voir dire questions.  If the parties have any disagreement about a particular question, the party or parties objecting shall state the reason for their objection below the question.

(3)     The parties shall file a proposed set of <u>stipulated</u> jury instructions. The instructions shall be accompanied by citations to legal authority.  If a party believes that a proposed instruction is a correct statement of the law, but the facts will not warrant the giving of the instructions, the party shall so state.  The party who believes that the facts will not warrant the particular instruction shall provide an alternative instruction with appropriate citations to legal authority.

(4)     Each party shall submit a form of verdict to be given to the jury at the end of the trial.

**IT IS FURTHER ORDERED** directing the parties to submit their proposed joint statement of the case, joint voir dire questions, stipulated jury instructions, and verdict forms.

**IT IS FURTHER ORDERED** that if the case will be tried to the Court, rather than to a jury, <u>instead of</u> filing a Proposed Pretrial Order, each party shall submit proposed findings of fact and conclusions of law by the same date the Proposed Pretrial Order is due.

**IT IS FURTHER ORDERED** that the parties shall keep the Court apprised of the possibility of settlement and should settlement be reached, the parties shall file a Notice of Settlement with the Clerk of the Court.

**IT IS FURTHER ORDERED** that this Court views compliance with the provisions

1  of this Order as critical to its case management responsibilities and the responsibilities of the

2  parties under Rule 1 of the Federal Rules of Civil Procedure.

3          DATED this 30th day of September, 2012.

4

5

6                                     Stephen M. McNamee
                               Senior United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6                          **IN THE UNITED STATES DISTRICT COURT**

7                            **FOR THE DISTRICT OF ARIZONA**

8

9    ,                                    )   No. CV -PHX-SMM
                                          )
10              Plaintiff,                )   **PROPOSED   PRETRIAL   FORM   OF**
                                          )   **ORDER**
11   vs.                                  )
                                          )
12                                        )
                                          )
13   ,                                    )
                Defendant.                )
14                                        )
                                          )
15   _____)

16          Pursuant to the Scheduling Order, the following is the joint Proposed Final Pretrial

17   Order   to   be   considered   at   the   Final   Pretrial   Conference   set   for

18   _____, _____ .

19          A.   **COUNSEL FOR THE PARTIES**

20               (Include mailing address, office phone and fax numbers).

21               Plaintiff(s):

22               Defendant(s):

23          B.   **STATEMENT OF JURISDICTION**.

24               Cite the statute(s) which gives this Court jurisdiction.

25               (e.g., Jurisdiction in this case is based on diversity of citizenship under Title 28

26               U.S.C. §1332.)

27               Jurisdiction (is/is not) disputed.

28

(If jurisdiction is disputed, the party contesting jurisdiction shall set forth with specificity the bases for the objection.)

C.  **NATURE OF ACTION**.

Provide a concise statement of the type of case, the cause of the action, and the relief sought.

(e.g., - This is a products liability case wherein the plaintiff seeks damages for personal injuries sustained when he fell from the driver's seat of a forklift. The plaintiff contends that the forklift was defectively designed and manufactured by the defendant and that the defects were a producing cause of his injuries and damages.)

D.  **CONTENTIONS OF THE PARTIES**.

With respect to each count of the complaint, counterclaim or cross-claim, and to any defense, affirmative defense, or the rebuttal of a presumption where the burden of proof has shifted, the party having the burden of proof shall list the elements or standards that must be proved in order for the party to prevail on that claim or defense. Citation to relevant legal authority is required.

(e.g., In order to prevail on this products liability case, the plaintiff must prove the following elements . . . .

In order to defeat this products liability claim based on the statute of repose, the defendant must prove the following elements . . . .)

E.  **STIPULATIONS AND UNCONTESTED FACTS**

1. The following facts are admitted by the parties and require no proof:

2. The following facts, although not admitted, will not be contested at trial by evidence to the contrary:

**F.   CONTESTED ISSUES OF FACT AND LAW**

1. The following are the issues of fact to be tried and decided: (Each issue of fact must be stated separately and in specific terms. Each parties' contention as to each issue must be set forth with respect to each and every issue of fact). E.g., Issue # 1: Whether Plaintiff used due care.

> Plaintiff Contends: Plaintiff looked both ways before stepping into the street . . . .

> Defendant Contends: Plaintiff was chasing a ball and darted out into the street without looking . . . .

2. The following are the issues of law to be tried and determined: (Each issue of law must be stated separately and in specific terms. Each parties' contention as to each issue must be set forth with respect to each and every issue of law). E.g., Issue # 1: Whether Plaintiff's suit is barred by the doctrine of laches.

> Plaintiff Contends: . . .

> Defendant Contends: . . .

**G.   LIST OF WITNESSES**.

A jointly prepared list of witnesses and their respective addresses, identifying each as either plaintiff's or defendant's, and indicating whether a fact or expert witness, must accompany this proposed order. If a witness' address is unknown, it should be so stated. A brief statement as to the testimony of each witness must also be included. Additionally, the parties shall designate which witnesses (1) shall be called at trial, (2) may be called at trial, and (3) are unlikely to be called at trial.

Additionally, the parties shall include the following text in this portion of the Proposed Pretrial Order:

The parties understand that the Court has put them on notice that they are responsible for ensuring that the witnesses they want to put on the stand to testify

- 3 -

are subpoenaed to testify, regardless of whether the intended witness is listed as a witness for the plaintiff(s) or the defendant(s). Simply because a party lists a witness does not mean that the witness will be called. Therefore, a party should not rely on the listing of a witness by the opposing party as an indication that the witness will be called. To the extent possible, the parties shall stipulate to the witnesses who will be called to testify.

H.   **LIST OF EXHIBITS**.

1. The following exhibits are admissible in evidence and may be marked in evidence by the Clerk:

a. Plaintiff's Exhibits:

b. Defendant's Exhibits:

2. As to the following exhibits, the parties have reached the following stipulations:

a. Plaintiff's Exhibits:

b. Defendant's Exhibits:

3. As to the following exhibits, the party against whom the exhibit is to be offered objects to the admission of the exhibit and offers the objection stated beneath:

a. Plaintiff's Exhibits:

(E.g., City Hospital records of Plaintiff from March 6, 1985 through March 22, 1985. Defendant objects for lack of foundation because . . . . (the objection must specify why there is a lack of foundation)).

b. Defendant's Exhibits:

(E.g., Payroll records of Plaintiff's employer which evidences payment of Plaintiff's salary during hospitalization and recovery. Plaintiff objects on the ground of relevance and materiality because (the objection must specify why there is a relevancy or materiality problem)).

I.   **DEPOSITIONS TO BE OFFERED**.

The parties shall list the depositions to be used at trial. The portions to be read at trial shall be identified by page and line number. Counsel should note objections to deposition testimony by writing the objection in the margins of that portion of the text of the deposition to which the objection is made. Moreover, these objections shall be explained in this portion of the Proposed Pretrial Order. As is the Court's practice at trial, it is <u>not sufficient</u> for an objecting party to simply state perfunctory grounds for an objection (e.g., "hearsay" or "lack of foundation") contained in the Proposed Pretrial Order. Each party must explain the basis for each perfunctory objection (e.g., <u>why</u> it is hearsay, <u>why</u> it lacks foundation, <u>why</u> it is irrelevant).

J.   **MOTIONS IN LIMINE**. Motions in limine shall be served, filed, and responded to in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

K.   **LIST OF ANY PENDING MOTIONS**

L.   **PROBABLE LENGTH OF TRIAL**

M.   **JURY DEMAND** - A jury trial (has) (has not) been requested. If a jury trial was requested, (indicate the appropriate selection):

1. the parties stipulate the request was timely and properly made;

2. the (Plaintiff or Defendant) contends the request was untimely made because: (explain why request was untimely); or

3. the (Plaintiff or Defendant contends that although the request for trial by jury was timely, the request is improper as a matter of law because: (indicate the legal basis why a jury trial would be improper).

For a Bench Trial

N-1. **PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** shall be filed and served by each party in accordance with the instructions contained

- 5 -

1    in the Order Setting Final Pretrial Conference.

2    <u>For a Jury Trial</u>

3    N-2.**STIPULATED JURY INSTRUCTIONS, PROPOSED VOIR DIRE**

4    **QUESTIONS, AND PROPOSED FORMS OF VERDICT** shall be filed in

5    accordance with the instructions contained in the Order Setting Final Pretrial

6    Conference.

7    O.   **CERTIFICATIONS**. The undersigned counsel for each of the parties in this

8    action do hereby certify and acknowledge the following:

9    1. All discovery has been completed.

10   2. The identity of each witness has been disclosed to opposing counsel.

11   3. Each exhibit listed herein (a) is in existence; (b) is numbered; and (c) has been

12   disclosed and shown to opposing counsel.

13   4. The parties have complied in all respects with the mandates of the Court's Rule

14   16 Order and Order Setting Final Pretrial Conference.

15   5. [Unless otherwise previously ordered to the contrary], the parties have made

16   all of the disclosures required by the Federal Rules of Civil Procedure.

17   APPROVED AS TO FORM AND CONTENT:

18   _____   _____

19   Attorney for Plaintiff                              Attorney for Defendant

20   Based on the foregoing,

21   **IT IS ORDERED** that this Proposed Pretrial Order jointly submitted by the parties

22   is hereby **APPROVED** and is thereby **ADOPTED** as the official Pretrial Order of this Court.

23   DATED this _____ day of _____, _____.

24

25                                                   _____

26                                                   Stephen M. McNamee
                                                     Senior United States District Judge

27

28                                        - 6 -